[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the wife Wendy Iezzi against her husband Frank Iezzi seeking a dissolution of their marriage. The parties have resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties were married on October 28, 1989. They have two children who have the following names and birth dates: Steven, born on December 20, 1990, and Alexandra, born on January 3, 1993. There are no other proceedings pending in this state or any other regarding the custody of the children. The parties' marriage has broken down irretrievably. There is no reasonable hope of reconciliation and the court orders a dissolution of the marriage. CT Page 14052
The court has carefully considered the statutory criteria for the granting of a dissolution of marriage, the awarding of custody, visitation, child support, alimony, and attorney's fees, and the dividing of the parties' assets and liabilities as applicable.
As indicated above, the parties have been married for about ten years. Their first child, Steven, was born two years after the parties' marriage and both parties agree that their marital difficulties began after the children were born. The parties also agree that the primary source of the problem in their marriage was their differing parenting styles, especially with Steven who has been diagnosed with certain behavioral or emotional conditions. The wife claims that the husband was very strict, mean and abusive to the children. On the other hand, the husband claims that the wife was too nurturing to the children. He claims that she provided them with no sense of delayed gratification and she too often allowed them to act impulsively. The husband admits that he wanted to provide the children with a firm, disciplined environment and that he would yell at them when they disobeyed or disrespected him. Although the husband denies the wife's testimony that he spanked the children often and inappropriately, the record establishes that he hit Steven on the head on one occasion with such severity that Steven's pediatrician referred the matter the state Department of Children and Family Services.
This dispute concerning their parenting styles so affected other areas of their relationship that the communication and intimacy between them began to suffer. The husband ultimately began an extramarital affair with another woman, Sue Lang, with whom he is presently living, but he maintains that this relationship began after the relationship with his wife had permanently broken down. In summary, the husband claims that the wife withdrew from the relationship emotionally and physically, and treated him only as a provider. Whereas the wife claims that he was abusive and controlling, particularly in regard to the children. After considering the testimony, demeanor, and credibility of the parties, the court concludes that both parties contributed to the breakdown of the marriage, but credits the wife's testimony that the husband's conduct caused the irretrievable breakdown of the marriage.
The wife is 42 years old. She is presently in good health and not suffering from any condition that would affect her working ability. She has an associate's degree in respiratory therapy and CT Page 14053 works as a respiratory therapist at Yale New Haven Hospital. According to her financial affidavit, she earns $908 a week gross from this employment. Her net income is approximately $645 a week, adding to her net income voluntary, savings deductions of $89. She lists weekly personal expenses of approximately $1,144 a week, but at least $150 to $200 of these expenses must be viewed as excessive or purely discretionary. The husband has been paying about $450 of these weekly personal expenses pursuant to pendent lite orders. Her liabilities total approximately $19,600; $7,148 of these debts are listed as joint liabilities between her and her husband and another $3,700 are listed as attorney fees' related to this litigation. In addition to the other personal property and accounts identified on her financial affidavit, she has bank accounts and investments totaling $38,324 and a retirement plan valued at $10,250. The parties jointly own the marital residence located on Rimmon Road in North Haven. The parties agree that the property has a value of about $175,000 and an equity value of about $23,930.
The husband is 43 years old and is also in good health. He works as a registered nurse at Yale New Haven Hospital and has received the education and training to work in this capacity. According to his financial affidavit, he earns $1,196 gross and $842 net a week from this employment. His financial affidavit also indicates that he earns $325 gross and $165 net a week from rental property he owns with his mother. However, the evidence provided additional information about his income and earning capacity not reflected on his financial affidavit.
First, the husband works 36 hours a week and is not considered a full time employee. Full time work is available to him and his explanations for why he does not work full time are either incredible or insufficient to justify his part time status. The husband's hourly pay rate is $33.22. Therefore, if he worked 40 hours a week, his gross weekly pay would be $1328 and his net pay would be about $985. The court will attribute this additional income to the husband as part of the financial orders issued herein.
His financial affidavit also fails to reflect a $1,800 salary increase he received in or about March 1999. This amount is equivalent to about $35 a week and will also be added to his income as part of the court's consideration of the financial orders CT Page 14054
As indicated above, the husband also has income from rental property owned jointly by him and his mother. According to his financial affidavit, his net income from the rental income is $165.25 a week. However, the evidence indicates that this estimate is incorrect. At trial, the husband testified that he realizes no net income from this property because he has an agreement with his mother which in effect requires him to bear all the expenses of the rental property and split the income with her in a manner that results in him receiving no income from the property. The court finds this testimony unbelievable, and alternatively, to the extent that it has any credibility, the court finds that this arrangement between the husband and his mother is too unreasonable for it to be accepted by the court for a fair and equitable consideration of the parties' resources and financial abilities. In contrast to his trial testimony, the husband's post-trial memorandum maintains that a fair estimate of his share of the rental income is $71 a week based on the rental income and reasonable expenses. The wife, on the other hand, claims that the rental income attributable to the husband should be $96 a week. After review of the evidence and the parties' conflicting positions, the court finds that the husband's analysis as outlined in his post-trial memorandum presents the more reasonable and credible position and that the husband's rental income is approximately $71 a week.
The husband also owns a company called Chimera, LLC. The company manufactures and sells radar detectors. The husband does not indicate any income or expenses related to this business on his financial affidavit. The evidence indicates, however, that although he has had minimal gross earnings from this business in recent years and limited profits if any, he does have a checking account for this business which contained $800 at the time of trial. This $800 also is not shown on his financial affidavit, but will be considered by the court as part of the disposition of this case.
The last issue concerning the husband's income is the wife's claim that because Ms. Lang is paying the mortgage and utilities on her residence that she shares with the husband, some amount of these expenses should be attributed to the husband as gifts. See generally, Unkelbach v. McNary, 244 Conn. 350 (1998). As compared to the facts in Unkelbach, the evidence here establishes that Ms. Lang is living in her own home, not the home of the party defendant, and paying expenses that she would be obligated to pay whether the defendant was living there or not. The court also CT Page 14055 notes that the mortgage and utility expenses shown on the husband's financial affidavit are for the expenses associated with the wife's residence because he pays these expenses pursuant to the pendent lite orders. Thus the evidence establishes that the husband's own, decreased living expenses are actually being caused by his payment of the wife's household expenses and are not being created by gifts or contributions from Ms. Lang.
It is further noted that the court's decision is now governed by the child support guidelines which became effective August 1, 1999. These guidelines expressly direct that for child support purposes, contributions of a domestic partner are to be treated in a manner different from the manner outlined in Unkelbach. As compared to the discussion in Unkelbach, the guidelines now explicitly exclude such contributions from the definition of income. Child Support Regulations, Sec. 46b-21 5a-1(11) (B) (iv). Under the revised guidelines, regularly recurring contributions from a domestic partner are treated as deviation criteria under the guidelines, but only when "the parent has reduced his or her income or has experienced an extraordinary reduction of his or her living expenses as a direct result of such contributions or gifts." Child Support Guidelines, Sec. 46b-215a-3 (b)(1)(D). Neither of these circumstances exists here and the court finds that the contributions from Ms. Lang to the husband are not sufficient to support a deviation from the child support guidelines.
Furthermore, even under an analysis strictly controlled byUnkelbach, the evidence here fails to establish sufficiently the amount of the payments made by Ms. Lang or the amount of the obligations that should be fairly attributable to the husband in order for the court to determine specifically what exact amounts, if any, should be considered gifts regularly received by the husband. Therefore, on this record, the court will not attribute any of the household expenses being paid by Ms. Lang as gifts to the husband.
In summary, in light of the above, the court finds that the gross weekly income that should be attributed to the husband as part of the court's consideration of the financial orders is $1,434.
The husband's financial affidavit also indicates the following. His personal, weekly expenses are about $758, after considering the evidence that the mortgage on the marital CT Page 14056 residence that he is paying is actually $347 a week and not $429 a week as indicated on his financial affidavit. Also, as indicated previously, these expenses of $758 include payments totaling $450 a week being made by the husband to maintain the expenses of the marital residence occupied by the wife and the children. The husband's total liabilities, according to his financial affidavit are about $21,000. He has bank accounts having a value of $2,795, stocks and mutual funds having a value of $36,100, and a retirement plan having a value of $14,120. He owns two automobiles having a total value of Also as previously indicated, the husband jointly owns rental property with his mother on Foster Street in New Haven, Connecticut. He estimates that the total equity value of this property is about $54,958, making the value of his one-half interest $27,479.
 ORDERS
1. Dissolution of marriage. The parties' marriage is hereby dissolved.
2. Custody and Visitation. The parties shall share joint legal custody of the minor children with final decision making authority with the mother. The mother shall have physical custody of the children. The court adopts the parties' stipulation as stated on the record and orders that the father's visitation, including overnight visitation, shall be governed by the court's December 11, 1998 order that accepted the parties' custody and visitation agreement. Pursuant to this order, the husband shall not enter the wife's residence during pick up and drop off of the children unless invited to do so by the plaintiff or unless an emergency exists.
4. Child Support. The father shall pay child support pursuant to the child support guidelines, effective August 1, 1999. The court calculates that the husband's child support obligation under these guidelines is $322 a week, adopting the revised child support guidelines prepared by the plaintiff dated October 18, 1999. The child support shall be paid through a wage withholding in the manner authorized by law.
The husband shall be entitled to claim the children as exemptions for tax purposes and the wife shall be precluded from claiming the children as exemptions.
5. Health and life insurance. The wife shall provide medical CT Page 14057 insurance for the benefit of the minor children. The parties shall split equally the uncovered or unreimbursed medical and dental expenses incurred by or on behalf of the minor children. The husband shall maintain life insurance on his life with the children named as beneficiaries in the amount of at least $95,000 for as long as he has a child support obligation. The court notes that according to his financial affidavit, the husband has an existing life insurance policy in the face amount of $96,555 and pays a weekly premium of $23.40.
6. Alimony. The husband shall pay periodic alimony to the wife in the amount of $50 a week for ten years. This alimony shall terminate upon the death of either party, the wife's remarriage, or the wife's cohabitation as defined by Section 46b-86 (b) of the General Statutes. The alimony shall be paid through a wage withholding in the manner authorized by law.
7. Property divisions. The wife shall retain exclusive possession of the marital residence located on Rimmon Road, North Haven, Connecticut. She shall be responsible for payment of the mortgage and all other expenses related to the property and she shall indemnify and hold the husband harmless therefrom, except that the parties shall share equally the expenses for any repair or maintenance of the premises exceeding $500. The husband shall be given prior notice of any such expense exceeding $500 for which he has a shared liability. No later than January 1, 2012 or upon the wife's remarriage, whichever shall first occur, this property shall be placed on the market and shall be sold. The sale shall be done in a commercially reasonable manner. The net proceeds of the sale shall be split between the parties with the wife receiving 60% and the husband receiving $40% of these proceeds. The wife shall have the right to sell the property prior to January 1, 2012. The court shall retain jurisdiction over the case to effectuate the sale.
The husband shall retain ownership of the property located on Foster Street, New Haven, Connecticut. He shall be responsible for the mortgage and all other expenses related to the property and he shall indemnify and hold the wife harmless therefrom.
The husband shall transfer to the wife the 1990 Honda and the wife shall transfer to the husband the 1986 Toyota Celica. These transfers shall be effectuated within 60 days.
The husband shall transfer 50% of the value of his Fidelity CT Page 14058 403B account to the wife through a Qualified Domestic Relations Order or through such other instrument consistent with the terms of the plan.
Except as provided herein, the wife shall retain all other assets listed on her financial affidavit or in her possession and the husband shall retain all other assets listed on his financial affidavit or in his possession.
8. Debt divisions. On her financial affidavit, the wife lists as joint debts a visa gold debt of $6,202 and an American Express debt of $946. The wife shall be responsible for these debts and shall indemnify and hold the husband harmless therefrom. Unless sooner paid, these debts owed on the visa gold and American Express accounts shall be paid in full by the wife within 60 days. The court notes that pursuant to the above orders, the awards to the wife include a tax refund of $4,871 and an insurance dividend check of $561. Thus, these funds are available to be applied against these obligations.
Except as otherwise provided herein, the parties shall be responsible for their own debts as listed on their financial affidavits and they shall indemnify and hold each other harmless therefrom respectively.
9. Counsel fees. The parties shall be responsible for their own counsel fees. The wife shall be responsible for one-third and the husband shall be responsible for two-thirds of the fee of the children's attorney, Attorney Lynn Pellegrino. The defendant has objected to Attorney Pelligrino's fees and this objection shall be scheduled for a hearing forthwith. In the absence of some other mutual agreement between each party and Attorney Pellegrino, the parties shall pay their respective shares of Attorney Pellegrino's fee within 60 days of the court's ruling on the defendant's objection to her fees and the court's determination of the amount of the fee.
So ordered October __, 1999.
Stevens, J.